UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEWCASTLE PROPERTIES, LLC, | ) | |
| | ) | Case No. 09 C 1875 |
| Appellant, | ) | Judge Joan B. Gottschall |
| v. | ) | _____ |
| | ) | |
| K&P AUTOMOTIVE, INC., et al., | ) | On appeal from: |
| | ) | Case Nos. 06 B 10562 |
| Appellees. | ) | 06 B 10563 |
| | ) | |

# **MEMORANDUM OPINION & ORDER**[1]

This is an appeal from two related bankruptcy cases.[2] Appellant Newcastle Properties, LLC ("Newcastle") was the landlord of appellee K&P Automotive, Inc. ("K&P"), a chapter 11 debtor, which was owned and managed by Ashok Parida, another chapter 11 debtor. Newcastle made claims against both K&P and Parida (collectively, the "debtors") based on K&P's alleged breach of contract and Parida's breach of a guaranty of K&P's contract. Those claims were tried jointly. The bankruptcy court, the Honorable Carol A. Doyle presiding, issued findings of fact and conclusions of law that

---

[1] Oral argument was requested by appellant. After review of the briefs and record, and after asking for additional briefing on one issue, *see* n.2 *infra*, the court finds that oral argument is not needed. The facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument. Fed. R. Bankr. P. 8012.

[2] Newcastle timely filed its notice of appeal from an order of the bankruptcy court. *See* Fed. R. Bankr. P. 8001 & 8002. A preliminary issue on which the court requested additional briefing from appellant is whether the court has jurisdiction over Case No. 06 B 10563, which pertains to debtor Ashok Parida. Appellant Newcastle Properties, LLC filed claims against both Parida and K&P. Parida's bankruptcy case was reassigned within the bankruptcy court on a finding of relatedness to debtor K&P Automotive, Inc.'s bankruptcy case, No. 06 B 10562. The bankruptcy court order from which Newcastle appeals addressed both claims. Newcastle indicated its intent to appeal the order as regards both cases by filing a notice of appeal in which both case numbers appeared in the caption. While appellant did not electronically file a notice of appeal in Case No. 06 B 10563, it did file its notice of appeal with the clerk of court, which is the explicit requirement by rule. Fed. R. Bankr. P. 8002(e). Construing the notice of appeal liberally, *see Smith v. Barry*, 502 U.S. 244, 247-48 (1992), the court finds that it has jurisdiction over the appeals of both cases.

sustained the objections and disallowed Newcastle's claims. Newcastle's appeal followed. For the reasons stated herein, the court affirms the bankruptcy court's decision.

## I. BACKGROUND[3]

**A.    Underlying facts**

In 1992, K&P and a predecessor landlord executed a lease for K&P to operate an auto service center on the landlord's property in Aurora, Illinois. Soon thereafter, Parida executed a guaranty for all of K&P's lease obligations. The lease concerned a corner space (which the bankruptcy court termed "space 21"). However, space 21 lacked many of the amenities necessary for K&P to run its auto service business, including 200-amp electrical service, concrete flooring, open space in which to repair vehicles (space 21 was partitioned), and overhead doors. The lease obligated the predecessor landlord to make certain improvements to remedy these deficiencies before K&P took possession of space 21. The lease also provided that K&P's possession of space 21 would signify its acceptance of the improvements made. The parties agreed in an exhibit to the lease that, until the improvements were made, K&P could occupy an adjacent space (which the bankruptcy court termed "space 19"), which had many of the necessary features that its neighbor lacked. Space 19 was not entirely satisfactory, either, as it lacked a restroom and a pedestrian entrance, both of which space 21 had. The two spaces were not separated in any way, so K&P occupied both space 19 and space 21, at first temporarily, but then, as it turned out, throughout the lease.

Early in the lease, the predecessor landlord noted that K&P was occupying both spaces, noted its plan to make the improvements to space 21, and asked K&P to contact

---

[3]    These facts are taken from the parties' pretrial stipulation, *see* Record on Appeal ("Rec.") Ex. 33, and from those findings of fact by the bankruptcy court that are not specifically challenged by Newcastle.

it. No improvements were ever made, though, and K&P continued to occupy both spaces. In 1994, Parida, on behalf of K&P, executed an "estoppel letter" which stated that K&P's sole agreement with the landlord beyond the lease was that K&P "will use the entire space until the modification is completed."

In 1995, Norcor Autocare Associates, LP ("Norcor") purchased the property from its predecessor. Shortly before this purchase, Newcastle, as agent for Norcor, demanded that K&P pay more rent in light of the latter's occupation of both spaces. K&P refused. In the years that followed, Newcastle repeatedly demanded that K&P vacate space 19 so that Newcastle could build a wall between the two spaces, but never sent anyone to the premises to conduct such work. In 2000, Newcastle reverted to its previous demand, notifying K&P that rent would increase. K&P continued to pay the originally agreed-upon rent, but no more, until the end of the lease.

At no point did Newcastle obtain the necessary permits to improve space 21 as promised in the lease, send anyone to the premises to conduct any such improvements, or ask K&P to vacate the portions of space 21 that K&P occupied so that those improvements could be made.

**B.    Procedural history**

Asserting that it was owed unpaid rent, Newcastle sued K&P and Parida in the Circuit Court of Cook County, Illinois (the "state court"). In March 2006, the state court entered judgment against K&P and Parida in the amount of $164,000, plus costs. The state court based the judgment on several matters that it deemed the debtors to have admitted by failing to timely respond to requests to admit pursuant to Illinois Supreme Court Rule 216. The debtors appealed the state court's judgment, and the Illinois

3

Appellate Court, First District (the "appellate court") reversed and remanded, finding that several of the debtors' purported admissions were in fact legal conclusions, which were not the proper subject of Rule 216 admissions.

Before the appellate court issued its decision, debtors filed their respective bankruptcy cases. No further state court proceedings occurred and, as described within, Newcastle never moved the bankruptcy court in writing for a stay to permit such further proceedings. Rather, Newcastle filed claims against each debtor, the debtors filed objections, and the bankruptcy court held a consolidated evidentiary hearing.

On February 24, 2009, the bankruptcy court issued an order denying Newcastle's claims and sustaining the debtors' objections and a twenty-six page opinion setting forth the findings of fact and conclusions of law explaining that order. (*See generally* Memorandum Opinion, Rec. Ex. 36 ("Op.").) Relevant to this appeal, the court held that: the debtors' Rule 216 admissions were of no effect in bankruptcy court; K&P was entitled to occupy space 19 and space 21 until the landlord (first the predecessor, then Norcor or Newcastle) made the required improvements to space 21 and then gave notice to K&P; the lease required the landlord to make the required improvements to space 21 before K&P was obligated to vacate space 19; and K&P did not owe additional rent for its continued occupancy of space 19. In sum, the bankruptcy court held that "K&P's failure to vacate space 19 or pay extra rent on space 19 was not a breach of the lease." (*Id.* 16.)

On March 5, 2009, Newcastle appealed the bankruptcy court's order.

## II. ISSUES ON APPEAL

Newcastle challenges four aspects of the bankruptcy court's ruling. First, Newcastle contends that the bankruptcy court erred by deciding that K&P was not required to vacate or pay rent for the use of space 19 until space 21 was improved, given the parties' pretrial stipulations discussed more fully within. Second, according to Newcastle, the bankruptcy court erred when it construed the Lease to allow for debtors' occupancy of space 19 but determined that Newcastle did not owe any additional rent. Third, Newcastle contests the bankruptcy court's *sua sponte* exclusion of certain judicial admissions that the debtors made in the state court proceedings pursuant to Illinois Supreme Court Rule 216. Fourth, Newcastle contends that the bankruptcy court should have allowed the trial of Newcastle's claims to proceed in the Circuit Court of Cook County, rather than in the bankruptcy court.[4]

## III. STANDARD OF REVIEW

Newcastle's assertion that all of its issues are questions of law subject to *de novo* review is partially correct. The legal effect to be given judicial admissions and the interpretation given the plain meaning of a contract are both questions of law, which the court reviews *de novo*. See *EraGen Biosciences, Inc. v. Nucleic Acids Licensing, LLC*, 540 F.3d 694, 698 (7th Cir. 2008). However, the interpretation of an ambiguous contract requires a more deferential review, and findings of fact require review only for clear error. See *EraGen Biosciences*, 540 F.3d at 698; *see also* Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ."). Finally, the bankruptcy court's decision not to stay

---

[4] Newcastle makes the fourth point listed above third, and vice versa, but the arguments are ordered as such here for purposes of analysis within.

proceedings is reviewed for abuse of discretion. *See Hower v. Molding Sys. Eng'g Corp.*, 445 F.3d 935, 938 (7th Cir. 2006).

## IV. ANALYSIS

### A. The effect of debtors' stipulations

The bankruptcy court's interpretation of the contract as a whole, even without reference to extrinsic evidence, led to its conclusion that K&P was not in breach. (Op. 16.) Newcastle challenges this interpretation. An interpretation of an unambiguous contract is a question of law which this court reviews *de novo*. *See Covinsky v. Hannah Marine Corp.*, 903 N.E.2d 422, 426-27 (Ill. App. Ct. 2009); *see also EraGen Biosciences*, 540 F.3d at 698. One Illinois court summarized the state's contract law as follows:

> The primary object of contract construction is to give effect to the intention of the parties. That intention should be ascertained from the language of the contract. Clear and unambiguous contract terms must be given their ordinary and natural meaning. Contracts should be interpreted as a whole, giving meaning and effect to each provision thereof.

*Srivastava v. Russell's Barbecue, Inc.*, 523 N.E.2d 30, 33-34 (Ill. App. Ct. 1988) (citations omitted). The Seventh Circuit has further noted that under Illinois law, "In construing a contract, it is presumed that all provisions were inserted for a purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions." *See Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 713 (7th Cir. 1993) (quoting *Mayfair Constr. Co. v. Waveland Assoc. Phase I Ltd. P'ship,* 619 N.E.2d 144, 152 (Ill. App. Ct. 1993)).

Newcastle first argues that the bankruptcy court erroneously determined that K&P could continue to occupy space 19 rent-free until space 21 was completed. This holding is in error, Newcastle contends, because of the following pretrial stipulations by the parties:

5. As a part of the lease agreement, NEWCASTLE allowed K&P to occupy and use for business the adjacent space No. 19 only until the completion by NORCOR and NEWCASTLE of the construction of a demising wall between spaces No. 21 and No. 19.

6. As a part of the lease agreement, K&P promised and agreed to cooperate with NORCOR during the term of the lease and agreed upon receipt of a notice to vacate space No. 19 so that NORCOR could build the demising wall between spaces No. 19 and No. 21 to be able to rent space No. 19 to another tenant.

7. During the term of the lease, NORCOR and NEWCASTLE could not rent space no. 19 to any tenant because K&P refused to vacate space No. 19 and thus prevented NORCOR from building the demising wall separating spaces No. 19 and No. 21.

(Rec. Ex. 33, at 5.) According to Newcastle, these stipulations are incompatible with the bankruptcy court's determination that K&P was entitled to occupy space 19 until the required improvements were made to space 21. Newcastle also argues that it could not have made the required improvements to space 21 because K&P occupied that space.

The bankruptcy court addressed these issues. In reviewing the lease and its attachments, the court found three provisions to each of which, consistent with Illinois law, it sought to give effect. *See Arrow Master*, 12 F.3d at 712-13. First, the court addressed section 2.03 of the lease, which states, in relevant part:

> Landlord and Tenant hereby agree that Tenant's taking possession of the Premises shall be deemed conclusive evidence of Tenant's acceptance of the Premises in satisfactory condition and in full compliance with all covenants and obligations of Landlord in connection therewith.
>
> Prior to the Possession Date, Landlord will substantially complete the construction of the Auto Service Center and the improvements in and to the Premises in accordance with Exhibit B attached hereto, all of which shall be completed at Landlord's expense.

(Rec. Ex. 1, at 4; *see also* Op. 10.) The court next addressed Exhibit B to the lease, which lists the required improvements. (*See* Rec. Ex. 1, Ex. B; *see also* Op. 10.) Third, the court considered Exhibit I to the lease, which states as follows:

7

> Landlord and tenant acknowledge that although this lease is for the space commonly known as 21 South in Fox Valley Auto Care Center, Aurora Illinois, that tenant will initially occupy and use space known as 19 South. Tenant and Landlord agree cooperate [*sic*] during the construction time necessary to divide the current space into separate spaces and then subsequently move the tenant from 19 South to 21 South. Tenant agrees to cause its equipment and fixtures to be moved from space 19 to space 21 upon reasonable notice from Landlord. Tenant acknowledges that this will take place over a period of several months, including time necessary to obtain necessary building permit [*sic*] from the city of Aurora. Landlord agrees to use due diligence and care in its construction so as to cause minimum disruption to Tenant's business.

(Rec. Ex. 2.)

Reconciling these provisions, the bankruptcy court found that: (1) as evidenced by section 2.03 and Exhibit B, the parties to the lease initially contemplated that the landlord would make the improvements to space 21 before K&P moved into the auto center; (2) that, in executing Exhibit I, the parties allowed for K&P to occupy space 19 until the improvements were made to space 21; (3) that K&P would also be allowed to occupy space 21, which with space 19 formed "the current space" described in Exhibit I, given the deficiencies of space 19 described in section I above; (4) that after the landlord improved space 21 and provided notice, K&P would move out of space 19 and into space 21; and (5) K&P's post-improvement possession of space 21 would be deemed acceptance of the improvements. (*See* Op. 14-15.)[5]

In its appeal, Newcastle argues that the second and fourth conclusions above were in error. As Newcastle would have it, once it gave notice to K&P to vacate space 19, K&P had to comply, regardless of whether Newcastle had made the required

---

[5] In the bankruptcy court, Newcastle argued that K&P's occupation of space 21 was, pursuant to section 2.03 of the lease, indicative of its acceptance of the improvements to that space, despite the fact that no improvements were made. (Op. 14-15.) Newcastle has made no such argument here. Newcastle likewise has not addressed the bankruptcy court's determination, discussed above, that Exhibit I entitled K&P to occupy both space 19 and space 21.

8

improvements to space 21 (and also regardless, apparently, of whether K&P could actually operate its business out of space 21). According to Newcastle, the debtors' stipulation that "K&P . . . agreed upon receipt of a notice to vacate space No. 19," taken with the other stipulations described above, support this theory, and render the bankruptcy court's conclusion erroneous.

As Exhibit I states, K&P did agree to vacate space 19 as the parties stipulated. However, the contract makes equally clear Newcastle's obligation to make the necessary improvements to allow K&P to move into space 21. The fact that Newcastle did not stipulate to its own obligation as stated in the lease does not lessen the effect of the lease in any way. The bankruptcy court reconciled these competing promises by determining that the landlord's promise that it would improve space 21 was a prerequisite (along with the landlord's notice to K&P that it wanted K&P to vacate) to K&P's obligation to vacate space 19. This conclusion does not undermine the force of the stipulation cited by Newcastle, nor (as Newcastle would have it) is the converse true. The bankruptcy court's interpretation of the unambiguous contribution is sensible, and all the more so in light of its findings that Newcastle's interpretation would be antithetical to the parties' intentions. As the bankruptcy court found, K&P probably could not continue to operate its business in an unimproved space 21, given the space's various deficiencies, and almost certainly could not move in and still allow Newcastle to improve the space as required. (Op. 22.)[6]

Newcastle does not deny that it was bound to make the improvements to space 21. Rather, Newcastle reiterates its argument made in the bankruptcy court that K&P's occupation of space 21 made improvements impossible. (Appellant Br. 11.) In other

---

[6] Newcastle makes no mention of these findings in its brief (as with many other findings by the bankruptcy court), and the court finds no clear error by the bankruptcy court.

words, K&P cannot take advantage of the condition precedent to its performance of its lease obligation when it rendered the occurrence of that condition impossible by occupying space 21. (*Id.*) The bankruptcy court considered and rejected this argument, noting that Newcastle never asked K&P to vacate space 21, never took any other steps to improve space 21 (such as obtaining building permits), and never intended to make the required improvements to space 21. Newcastle does not contest these factual findings, and points to no evidence that suggests the bankruptcy court erred in making them, and the court finds no clear error in the bankruptcy court's determination. Given, then, that Newcastle neither intended to nor attempted to improve space 21, its argument that it could not make improvements on the space because K&P rendered the improvements impossible is unpersuasive, and its cited case law is inapposite.

The bankruptcy court's factual findings described above were not clearly erroneous, and its reading of the plain language of the contract, giving effect to all its provisions, was correct. The bankruptcy court's determination that K&P was entitled to occupy space 19 until the landlord made the required improvements to space 21 is therefore affirmed.

**B.     The lease and space 19**

Newcastle's second argument is that the bankruptcy court erred when it determined that the lease covered space 19 because, according to Newcastle, "There was a written lease only for Space 21 with the right to use Space 19 for a fixed period of time." (Appellant Br. 11.) Newcastle is incorrect on both contentions. First, the written lease was not only for space 21; Exhibit I applied to space 19 (in the interim) and space 21 (after the landlord improved it). By not making the required improvements to space

21, Newcastle itself demonstrated that K&P's right to use space 19 was not "for a fixed period of time." (*Id.*)

Newcastle then cites two cases that it put before the bankruptcy court, both of which stand for the rule that a party that occupies another's premises without any lease governing the payment of rent becomes liable upon notice from the landlord for the payment of a reasonable amount of rent, provided the party fails to vacate the premises. *See Ill. Cent. R.R. Co. v. Thompson*, 5 N.E. 117, 116 Ill. 159, 162 (1886); *see also Jackson v. Reeter*, 201 Ill. App. 29, 1915 WL 2735, at *2 (Ill. App. Ct. Oct. 13, 1915). Newcastle claims that these cases apply here because "the only lease for Space 19 would arise by operation of law as an implied lease." (Appellant Br. 12.)

Newcastle misconceives the nature of the lease and the order from which it appeals. As the bankruptcy court properly pointed out, Newcastle's cited cases "do not apply in this case because there is a written lease between the parties and the lease permits K&P to occupy both spaces while paying the agreed rent until the improvements to space 21 are completed." (Op. 24.) There is no implied lease here but rather a written one. Exhibit I explicitly entitled K&P to occupy space 19 until the landlord improved space 21 as required. Newcastle never improved space 21. Therefore, K&P was not required to vacate space 19 and so owes no rent beyond what it already paid under the lease.

The bankruptcy court's determination that K&P owed no additional rent is affirmed.

## C. Exclusion of previous judicial admissions

Newcastle challenges the bankruptcy court's exclusions of the debtors' Rule 216 admissions from the state court proceeding. As the bankruptcy court noted, the exclusion of many of these admissions was a moot point, given that the debtors stipulated in the bankruptcy proceeding to many of the facts that were deemed admitted in the state court proceeding. (Op. 3.) The bankruptcy court then found that the Rule 216 admissions were not binding on it because Rule 216(e) expressly limits the effect of Rule 216 admissions to the actions in which the admissions are made.[7]

Newcastle challenges the bankruptcy court's ruling, initially arguing that it spent time and money in the state court and appellate court litigating the Rule 216 issues, and that it was prejudiced by the bankruptcy court's refusal to enforce those admissions. (*See* Reply Br. 6; *see also* Appellant Br. 14-15.) It does not appear that Newcastle presented this argument to the bankruptcy court, either in court or in a written motion.[8] In any case, though, the time and expense the parties spent in state court is irrelevant to the legal question of whether the bankruptcy court should have given effect to the Rule 216 admissions.[9]

In its reply brief, Newcastle argues that Rule 216 compels the application of debtors' state court admissions to the bankruptcy court proceedings because the latter

---

[7] The bankruptcy court also held that the admissions had no collateral estoppel effect on the bankruptcy court proceedings. Newcastle has made no challenge to that ruling, and so the court will not disturb it.

[8] The bankruptcy court's opinion references post-trial briefing by Newcastle. (Op. 21.) Newcastle chose not to designate this briefing as part of the record on appeal. There is no indication that Newcastle raised the issue of the time and money spent litigating in state court before the bankruptcy court as part of the bankruptcy court's Rule 216 analysis. Rather, the focus of Newcastle's Rule 216 argument appears to have been that those admissions were binding on the bankruptcy court. (*Id.* 3.)

[9] As explained within, however, these arguments are relevant to the question of whether the bankruptcy court should have stayed its proceedings.

12

"was the same proceeding" as the former. (Reply Br. 6.) Newcastle failed to make this argument before the bankruptcy court and raised it for the first time here on reply, and so waived it. *Dye v. United States*, 360 F.3d 744, 751 n.7 (7th Cir. 2004).[10] The bankruptcy court's proper determination that Rule 216 admissions were not binding on it is therefore affirmed.

**D.     Proceeding in state court**

Finally, Newcastle contends that the bankruptcy court erred by not staying the bankruptcy court proceeding and allowing the case to proceed in state court, where Newcastle brought its original case against the debtors. As stated above, the court reviews the bankruptcy court's decision not to stay the case for abuse of discretion. *See Hower*, 445 F.3d at 938; *see also Cho v. Holland*, No. 04 C 5227, 2006 WL 2859453, at *4 (N.D. Ill. Oct. 3, 2006). In attempting to show such an abuse, Newcastle first admits that it never filed any motion to stay, then does not cite any authority supporting its argument. (Appellant Br. 13.) Instead, Newcastle argues that a motion would have been

---

[10]     Even if not waived, this argument is meritless. Illinois Supreme Court Rule 216(e) allows that admissions made thereunder apply to "the pending action and any action commenced pursuant to the authority of section 13–217 of the Code of Civil Procedure (735 ILCS 5/13–217) only," but not to "any other proceeding." Ill. S. Ct. R. 216(e). Newcastle's argument depends on the term "pending action;" while the rule does not define that term, the next clause shows that the term has a narrow application. That next clause allows that Rule 216 admissions apply to actions commenced under 735 Ill. Comp. Stat. 5/13-217, a statutory provision that allows the re-filing (or, more precisely, extends the limitations period for the re-filing) of certain actions that have been reversed on appeal or dismissed from federal court. *See* 735 Ill. Comp. Stat. 13-217 (West 2006). Thus, for example, debtors' Rule 216 admissions were binding on it in the original state court action ("the pending action") and were again binding on it after reversal and remand by the appellate court ("any action commenced . . ."). Ill. S. Ct. R. 216(e); *see also Zwicky v. Freightliner Custom Chassis Corp.*, 867 N.E.2d 527, 532 (Ill. App. Ct. 2007). What is equally clear, then, is that the post-appellate re-filed action is not "the pending action;" otherwise, the next clause, regarding 735 Ill. Comp. Stat 5/13-217, would be superfluous. Given this narrow definition of "action," the bankruptcy court, as it correctly determined, presided not over "the pending action," but over "any other proceeding," to which Rule 216 does not apply. Therefore, even if Rule 216 applied generally federal courts—a point contested by debtors, who argue that *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) and its progeny compelled the bankruptcy court to apply federal procedural law—the bankruptcy court correctly determined that the debtors' admissions were of no effect.

futile, and cites the portions of transcripts[11] from the bankruptcy court hearings most favorable to its argument. These transcripts show, at best, a tepid oral motion by Newcastle's counsel, followed by the bankruptcy court's consideration of the state trial judge's familiarity with the case and concern for expeditious trial of the claim (which, the bankruptcy court asserted, would be furthered by trial in the bankruptcy court). Newcastle cites to no portion of the transcript in which the bankruptcy court stated that a motion to stay would be useless, and a review of the transcript reveals none. To the contrary, the court replied to counsel's suggestion that he would file a motion by stating, "Well, you're free to try it if you want." (A46.)

Regardless of whether, as the debtors contend, Newcastle waived the argument that the court should have stayed the proceedings once the issue was raised at hearing, it fails here. Even assuming Newcastle's counsel made an oral motion before the bankruptcy court (which is far from clear), counsel raised none of the arguments it now makes. Rather, counsel simply stated that Newcastle preferred to proceed in state court without articulating any reason for the bankruptcy court to permit such a stay. Far from an abuse of discretion, the bankruptcy court's decision at the hearing appears to have been even-handed and entirely sensible, particularly without any written motion from Newcastle.

The remaining issue is a combination of Newcastle's third and fourth issues on appeal: whether the different effect to be given Rule 216 admissions in the bankruptcy

---

[11] Newcastle cited a transcript that it designated for the record on appeal but did not, in fact, include in the record on appeal. The duty to provide these items to the clerk was Newcastle's, *see* Fed. R. Bankr. P. 8006, but this omission is irrelevant, because Newcastle attached the relevant transcript in its appendix. Newcastle also designated a transcript from January 12, 2009 as R. Ex. 38, but did not include that exhibit in the record on appeal. That omission is likewise irrelevant because Newcastle does not cite to that transcript in either of its briefs.

14

court and the state court counseled a stay of proceedings in the bankruptcy court. Newcastle alludes to this point when it argues that the state court "would have been bound to apply all the judicial admissions made by Appellees." (*See* Appellant Br. 14.) The bankruptcy court, as discussed above, was not so bound. Given this, should the bankruptcy court have *sua sponte* stayed proceedings so that the state court action could proceed?

The problem with this argument is that it depends on prejudice, and Newcastle has identified none. As the bankruptcy court stated in its opinion, the debtors stipulated before the bankruptcy court to many facts that the state court had deemed admitted, reducing the difference between trial in state court and in bankruptcy court. Moreover, the bankruptcy court stated that "Newcastle has failed to identify a single alleged state court admission that is material to this matter to which the debtors did not stipulate." (*See* Op. 3.) So, too, here: Newcastle does not explain what facts were deemed admitted in state court but were not stipulated in bankruptcy court, nor has it explained how any such facts would change the outcome of its case. Newcastle's assertion that the bankruptcy court's decisions prejudiced it does not make it so. As with its decision not to stay the proceedings at the pretrial hearing, the bankruptcy court's decision not to stay the proceedings at the beginning of trial because of its ruling on the Rule 216 admissions was eminently sensible and far from an abuse of discretion.

## V. CONCLUSION

For the reasons stated above, the order of the bankruptcy court is affirmed.

15

ENTER:

              /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 14, 2010